**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF INDIANA**
**HAMMOND DIVISION**

| | | |
|---|---|---|
| BRUNETTA S. ALI, | ) | |
|     Plaintiff, | ) | |
| | ) | |
| v. | ) | CAUSE NO.: 2:14-CV-305-PRC |
| | ) | |
| CAROLYN W. COLVIN, | ) | |
| Acting Commissioner of the | ) | |
| Social Security Administration, | ) | |
|     Defendant. | ) | |

**OPINION AND ORDER**

This matter is before the Court on a Complaint [DE 1], filed by Plaintiff Brunetta S. Ali on August 29, 2014, and an Opening Brief [DE 17], filed on December 17, 2014. Plaintiff requests that the August 29, 2012 decision of the Administrative Law Judge denying her claim for disability insurance benefits and supplemental security income be reversed and remanded for further proceedings. On March 12, 2015, the Commissioner filed a response, and Plaintiff filed a reply on April 13, 2015. For the following reasons, the Court grants Plaintiff's request for remand.

**PROCEDURAL BACKGROUND**

Plaintiff filed applications for disability insurance benefits and supplemental security income on February 23, 2011, alleging an onset date of February 19, 2011. Her claim was denied initially and upon reconsideration. Plaintiff timely requested a hearing, which was held on August 16, 2012. In attendance were Plaintiff, her attorney, and an impartial vocational expert. On August 29, 2012, Administrative Law Judge ("ALJ") David R. Bruce issued a written decision denying benefits, making the following findings:

    1.    The claimant meets the insured status requirements of the Social Security Act through December 31, 2015.

2. The claimant has not engaged in substantial gainful activity since February 19, 2011, the amended alleged onset date.

3. The claimant has the following severe impairments: obesity, sleep apnea, fibromyalgia, asthma, degenerative joint disease of the bilateral knees.

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.

5. After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a) except with the requirement of a sit/stand option where the claimant must alternate 45 minutes of sitting with 25 minutes of standing throughout the day.

6. The claimant is unable to perform any past relevant work.

7. The claimant was born [in 1970] and was 40 years old, which is defined as a younger individual, age 18-44, on the alleged disability onset date.

8. The claimant has at least a high school education and is able to communicate in English.

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills.

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform.

11. The claimant has not been under a disability, as defined in the Social Security Act, from February 19, 2011, through the date of this decision.

(AR 34-42).

The Appeals Council denied Plaintiff's request for review, leaving the ALJ's decision the final decision of the Commissioner. *See* 20 C.F.R. §§ 404.981, 416.1481. Plaintiff filed this civil action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) for review of the Agency's decision.

The parties filed forms of consent to have this case assigned to a United States Magistrate Judge to conduct all further proceedings and to order the entry of a final judgment in this case. Therefore, this Court has jurisdiction to decide this case pursuant to 28 U.S.C. § 636(c) and 42 U.S.C. § 405(g).

**STANDARD OF REVIEW**

The Social Security Act authorizes judicial review of the final decision of the agency and indicates that the Commissioner's factual findings must be accepted as conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Thus, a court reviewing the findings of an ALJ will reverse only if the findings are not supported by substantial evidence or if the ALJ has applied an erroneous legal standard. *See Briscoe v. Barnhart*, 425 F.3d 345, 351 (7th Cir. 2005). Substantial evidence consists of "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Schmidt v. Barnhart*, 395 F.3d 737, 744 (7th Cir. 2005) (quoting *Gudgel v. Barnhart*, 345 F.3d 467, 470 (7th Cir. 2003)).

A court reviews the entire administrative record but does not reconsider facts, re-weigh the evidence, resolve conflicts in evidence, decide questions of credibility, or substitute its judgment for that of the ALJ. *See Boiles v. Barnhart*, 395 F.3d 421, 425 (7th Cir. 2005); *Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000); *Butera v. Apfel*, 173 F.3d 1049, 1055 (7th Cir. 1999). Thus, the question upon judicial review of an ALJ's finding that a claimant is not disabled within the meaning of the Social Security Act is not whether the claimant is, in fact, disabled, but whether the ALJ "uses the correct legal standards and the decision is supported by substantial evidence." *Roddy v. Astrue*, 705 F.3d 631, 636 (7th Cir. 2013) (citing *O'Connor-Spinner v. Astrue*, 627 F.3d 614, 618 (7th Cir. 2010); *Prochaska v. Barnhart*, 454 F.3d 731, 734-35 (7th Cir. 2006); *Barnett v. Barnhart*, 381 F.3d

664, 668 (7th Cir. 2004)). "[I]f the Commissioner commits an error of law," the Court may reverse the decision "without regard to the volume of evidence in support of the factual findings." *White v. Apfel*, 167 F.3d 369, 373 (7th Cir. 1999) (citing *Binion v. Chater*, 108 F.3d 780, 782 (7th Cir. 1997)).

At a minimum, an ALJ must articulate his analysis of the evidence in order to allow the reviewing court to trace the path of his reasoning and to be assured that the ALJ considered the important evidence. *See Scott v. Barnhart*, 297 F.3d 589, 595 (7th Cir. 2002); *Diaz v. Chater*, 55 F.3d 300, 307 (7th Cir. 1995); *Green v. Shalala*, 51 F.3d 96, 101 (7th Cir. 1995). An ALJ must "'build an accurate and logical bridge from the evidence to [the] conclusion' so that [a reviewing court] may assess the validity of the agency's final decision and afford [a claimant] meaningful review." *Giles v. Astrue*, 483 F.3d 483, 487 (7th Cir. 2007) (quoting *Scott*, 297 F.3d at 595)); *see also O'Connor-Spinner*, 627 F.3d at 618 ("An ALJ need not specifically address every piece of evidence, but must provide a 'logical bridge' between the evidence and his conclusions."); *Zurawski v. Halter*, 245 F.3d 881, 889 (7th Cir. 2001) ("[T]he ALJ's analysis must provide some glimpse into the reasoning behind [the] decision to deny benefits.").

**DISABILITY STANDARD**

To be eligible for disability benefits, a claimant must establish that she suffers from a "disability" as defined by the Social Security Act and regulations. The Act defines "disability" as an inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). To be found disabled, the claimant's impairment must not only prevent her from

4

doing her previous work, but considering her age, education, and work experience, it must also prevent her from engaging in any other type of substantial gainful activity that exists in significant numbers in the economy. 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B); 20 C.F.R. §§ 404.1520(e)-(f), 416.920(e)-(f).

When a claimant alleges a disability, Social Security regulations provide a five-step inquiry to evaluate whether the claimant is entitled to benefits. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The steps are: (1) Is the claimant engaged in substantial gainful activity? If yes, the claimant is not disabled, and the claim is denied; if no, the inquiry proceeds to step two; (2) Does the claimant have an impairment or combination of impairments that are severe? If not, the claimant is not disabled, and the claim is denied; if yes, the inquiry proceeds to step three; (3) Do(es) the impairment(s) meet or equal a listed impairment in the appendix to the regulations? If yes, the claimant is automatically considered disabled; if not, then the inquiry proceeds to step four; (4) Can the claimant do the claimant's past relevant work? If yes, the claimant is not disabled, and the claim is denied; if no, then the inquiry proceeds to step five; (5) Can the claimant perform other work given the claimant's residual functional capacity ("RFC"), age, education, and experience? If yes, then the claimant is not disabled, and the claim is denied; if no, the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(i)-(v), 416.920(a)(4)(i)-(v); *see also Scheck v. Barnhart*, 357 F.3d 697, 699-700 (7th Cir. 2004).

At steps four and five, the ALJ must consider an assessment of the claimant's RFC. The RFC "is an administrative assessment of what work-related activities an individual can perform despite [her] limitations." *Dixon v. Massanari*, 270 F.3d 1171, 1178 (7th Cir. 2001). The RFC should be based on evidence in the record. *Craft v. Astrue*, 539 F.3d 668, 676 (7th Cir. 2008) (citing 20 C.F.R. § 404.1545(a)(3)). The claimant bears the burden of proving steps one through four, whereas the

burden at step five is on the ALJ. *Zurawski*, 245 F.3d at 886; *see also Knight v. Chater*, 55 F.3d 309, 313 (7th Cir. 1995).

## ANALYSIS

In this appeal, Plaintiff argues that (1) the ALJ's credibility assessment is not supported by substantial evidence, (2) the ALJ failed to give proper weight to the consultative examiner's opinion, and (3) the ALJ erred in his RFC assessment when he failed to account for the effects of Plaintiff's obesity, sleep apnea, and depression. Remand is required because the ALJ made factual errors in relation to Plaintiff's diagnosis of fibromyalgia and to her use of a CPAP machine for sleep apnea, the effects of which permeate the ALJ's decision.

### A. Fibromyalgia Diagnosis

The ALJ erred when he discounted Plaintiff's fibromyalgia diagnosis on the basis that the diagnosis did not include the identification of any tender points when, in fact, Plaintiff's treating physician twice identified more than the minimum of 11 tender points for a diagnosis of fibromyalgia. *See Sarchet v. Chater*, 78 F.3d 305, 306 (7th Cir. 1996) ("The principal symptoms are 'pain all over,' fatigue, disturbed sleep, stiffness, and—the only symptom that discriminates between [fibromyalgia] and other diseases of a rheumatic character—multiple tender spots, more precisely 18 fixed locations on the body (and the rule of thumb is that the patient must have at least 11 of them to be diagnosed as having fibromyalgia) that when pressed firmly cause the patient to flinch.").

Plaintiff first received a differential diagnosis of fibromyalgia on July 16, 2010, when she presented to the emergency room with "whole body burning pain for 1 week." (AR 280). Plaintiff reported the pain as "severe" with no exacerbating factors. *Id*. The emergency room report does not

include a record of whether any tender points were identified. The ALJ did *not* acknowledge this diagnosis of fibromyalgia at the emergency room. (AR 38).

Approximately one month later, on August 10, 2010, Plaintiff was diagnosed with fibromyalgia by her treating physician, Dr. French. The ALJ discussed this diagnosis, recognizing that Plaintiff was diagnosed with "fibromyalgia with diffuse tender trigger points at the back, neck, thighs, legs." (AR 38, 311, 439). However, the ALJ noted that the diagnosis does "not include a specific identification of at least 11 positive tender points of the 18 possible tender points." (AR 38, 311, 439). As a result, the ALJ gave Plaintiff the "benefit of the doubt" by finding her fibromyalgia to be severe despite the failure of the doctor to identify at least 11 positive tender points at that visit. (AR 38).

Missing from the ALJ's analysis is Dr. French's subsequent identification on two separate occasions of more than 11 tender points. On July 6, 2011, Plaintiff presented to Dr. French with diffuse body pain. (AR 433). On physical examination, under the heading "musculoskeletal," Dr. French found 16 fibromyalgia tender points. (AR 435, 454). And, on October 5, 2011, Dr. French found 12 tender points. (AR 432). The ALJ did not discuss these findings by Plaintiff's treating physician, much less acknowledge the findings. Nor did the ALJ recognize the original August 10, 2010 diagnosis as having been made by Plaintiff's treating physician, as he noted only that the diagnosis was made at "Riggs Community Health Clinic." (AR 38). The ALJ's omission of the July 6, 2011 and October 5, 2011 findings led him to believe that the minimum number of tender points had not been identified, which led him to discount the diagnosis of fibromyalgia and in turn affected the credibility determination, the weight given to the consultative examiner, and the finding at step five that Plaintiff could do jobs in the economy.

7

First, in making a disability determination, the ALJ must consider a claimant's statements about her symptoms, such as pain, and how the symptoms affect her daily life and ability to work. *See* 20 C.F.R. §§ 404.1529(a), 416.929(a). Subjective allegations of disabling symptoms alone cannot support a finding of disability. *Id*. The ALJ must weigh the claimant's subjective complaints, the relevant objective medical evidence, and any other evidence of the following factors:

(1) The individual's daily activities;
(2) Location, duration, frequency, and intensity of pain or other symptoms;
(3) Precipitating and aggravating factors;
(4) Type, dosage, effectiveness, and side effects of any medication;
(5) Treatment, other than medication, for relief of pain or other symptoms;
(6) Other measures taken to relieve pain or other symptoms;
(7) Other factors concerning functional limitations due to pain or other symptoms.

*See* 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3). "Because the ALJ is in the best position to determine a witness's truthfulness and forthrightness . . . this court will not overturn an ALJ's credibility determination unless it is 'patently wrong.'" *Shideler v. Astrue*, 688 F.3d 306, 310-11 (7th Cir. 2012) (internal quotation marks omitted) (quoting *Skarbek*, 390 F.3d at 504-05); *see also Prochaska*, 454 F.3d at 738. Nevertheless, "an ALJ must adequately explain his credibility finding by discussing specific reasons supported by the record." *Pepper v. Colvin*, 712 F.3d 351, 367 (7th Cir. 2013) (citing *Terry v. Astrue*, 580 F.3d 471, 477 (7th Cir. 2009)); SSR 96-7p, 1996 WL 374186, at *2 (Jul. 2, 1996) ("The determination or decision must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight.").

In weighing Plaintiff's credibility in this case, the ALJ questioned "whether [Plaintiff] carries a definitive diagnosis of fibromyalgia" in the absence of any tender points being identified at the

8

August 10, 2010 visit. (AR 40). This caused the ALJ to find that Plaintiff's limitations due to her pain are excessive in relation to the medical evidence in the record. *Id.* Yet, Plaintiff's primary physical complaint is her constant and whole-body pain, complaints that are consistent with a diagnosis of fibromyalgia.

Plaintiff testified that she stopped working in February 2011 because of pain. She said her pain was mostly in her knee and legs, but sometimes was throughout her whole body. She described the pain as being "like someone had beaten [her] with a bat." (AR 71). Plaintiff testified that, while her pain does get better or worse, it is always present. Some days, she is confined to her bed as a result of the pain. She described difficulty standing and sitting. She testified in detail about her inability to wash dishes because she cannot stand long enough to complete the task. On her way to the hearing, Plaintiff asked her son (who drove her to the hearing because she cannot drive due to her pain) to pull the car over less than an hour into the ride so that she could get out and stretch. Plaintiff testified that she can sit for thirty to forty-five minutes before she has to stand up and move. If she sits longer, she requires assistance to get up. She no longer goes to church because of pain and because she cannot do the sitting and standing required during a sixty to ninety minute service. After sitting for a period of time, she has to reposition herself, lie down, or go to sleep. She testified that she spends the majority of the day lying down in bed. She testified that she would only be able to sit up or stand for two hours. Dr. French's identification of the tender points strengthens the diagnosis of fibromyalgia, which supports Plaintiff's allegations of pain.

In addition, Plaintiff consistently reported pain or tenderness in her back or knees in treatment records in August 2010, September 2010, May 2011, July 2011, October 2011, December 2011, and March 2012. (AR 438, 436, 435, 432, 425, 422). In December 2010, Plaintiff visited the

9

emergency room and reported bilateral foot pain for the previous several weeks, on which the doctor opined that her pain was due to arthritis, possibly complicated or increased by a fibromyalgia component. (AR 275-76). In January 2011, Plaintiff was treated at the emergency room for two days of headache and body ache. (AR 346). In May 2011, Plaintiff reported that her back and leg pain was "constant." (AR 398). There is no indication in her treatment records that Plaintiff's complaints of pain are exaggerated. The Court finds that, as a result of the minimal consideration given to the diagnosis of fibromyalgia based on the misstatement of the medical record, the credibility determination is not supported by substantial evidence.

Next, because the ALJ found Plaintiff not fully credible as a result of his misstatement of the fibromyalgia diagnosis, the ALJ erred in weighing the consultative examiner's opinion. (AR 40). An ALJ is required to evaluate every medical opinion received, regardless of its source. *See* 20 C.F.R. §§ 404.1527(c), 416.927(c). Factors the ALJ considers in weighing medical opinion evidence include the examining relationship, the treatment relationship, the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability, consistency, specialization, and other factors brought to the ALJ's attention. *Id.* §§ 404.1527(c)(1)-(6), 416.927(c)(1)-(6). "As a general rule, an ALJ is not required to credit the agency's examining physician in the face of a contrary opinion from a later reviewer or other compelling evidence." *Beardsley v. Colvin*, 758 F.3d 834, 839 (7th Cir. 2014). However, "[a]n ALJ can reject an examining physician's opinion only for reasons supported by substantial evidence in the record; a contradictory opinion of a non-examining physician does not, by itself, suffice." *Gudgel v. Barnhart*, 345 F.3d 467, 470 (7th Cir. 2003).

In this instance, the ALJ gave "some weight" to the consultative examiner's opinion, recognizing that the consultative examiner found that Plaintiff was extremely limited in everything she does physically due to diffuse pain and tenderness and that Plaintiff had a lot of fatigue that made it hard for her to stay awake and function. (AR 40). The only basis given for giving the opinion "some weight" is that the opinion was based upon a "one-time visit" and lacked "the perspective of a medical provider with a longitudinal treatment history." *Id*. This reasoning, alone, is nonsensical—no consultative examiner ever has more than a "one-time visit" experience with a claimant. Nor does the ALJ identify any contrary medical evidence to discredit the consultative examiner's opinion, including any contrary opinion from a treating provider. Rather, the consultative examiner's opinion is consistent with the diagnosis of fibromyalgia as well as Plaintiff's testimony and her consistent complaints of pain to her treating physician. The Court finds that the ALJ erred in weighing the opinion of the consultative examiner and that the reasoning is not supported by substantial evidence.

Finally, the vocational expert testified that an individual with Plaintiff's RFC who is off task for fifteen minutes per hour due to pain would be precluded from competitive work. The vocational expert also testified that, if an individual were to miss two or more days per month, competitive work would be precluded. Given Plaintiff's testimony and the diagnosis of fibromyalgia, the ALJ has not sufficiently explained how Plaintiff would not be precluded from competitive work based on the vocational expert's testimony.

The ALJ's factual error related to Plaintiff's fibromyalgia diagnosis requires reversal and remand because substantial evidence does not support the ALJ's decision.

## B. Sleep Apnea

Second, the ALJ erred in his factual assessment of Plaintiff's sleep apnea. Plaintiff was diagnosed with severe obstructive sleep apnea in September 2009 after a sleep study. (AR 263). Plaintiff's "Epworth Sleepiness Scale score of 18" was consistent with severe daytime sleepiness. *Id*. At the sleep study, Plaintiff responded positively to the use of a CPAP machine. *Id*. Citing this study, the ALJ found sleep apnea to be a severe impairment.

However, the ALJ incorrectly found that Plaintiff was prescribed a CPAP machine for her sleep apnea but that she could not afford one and, therefore, was not using one. (AR 39-40). Contrary to the ALJ's finding, Plaintiff testified at the hearing that she had a CPAP machine. (AR 67). Nevertheless, she testified that she has problems sleeping and dozes off frequently, even when sitting up or talking with someone. (AR 78, 83, 85). Because the ALJ found that Plaintiff did not have a CPAP machine due to cost, the ALJ did not address whether the CPAP machine has been effective in addressing Plaintiff's ability to function in light of her testimony of daytime sleepiness. The Court recognizes that, at the time of the consultative examination in February 2011, Plaintiff reported "dozing off a lot" and that she was *not* using a CPAP machine. But she testified at the hearing in August 2012 that she had a CPAP machine, and she also testified to daytime somnolence issues. This factual error affected the ALJ's credibility determination because it appears that he found her less than fully credible on the basis that she was not using a CPAP machine. (AR 39-40).

Moreover, even if she was not using a CPAP machine because she was unable to afford it, her failure to use the machine due to cost would be a "good reason" for failing to pursue treatment but not a reason to discredit her. SSR 96-7p, at *7-8 ("[T]he adjudicator must not draw any inferences about an individual's symptoms and their functional effects from a failure to seek or

pursue regular medical treatment without first considering any explanations that the individual may provide . . . . For example: . . . The individual may be unable to afford treatment . . . .").

The error also affected the RFC determination. The RFC is a measure of what an individual can do despite the limitations imposed by her impairments. *Young v. Barnhart*, 362 F.3d 995, 1000 (7th Cir. 2004); 20 C.F.R. §§ 404.1545(a), 416.945(a). The determination of a claimant's RFC is a legal decision rather than a medical one. 20 C.F.R. §§ 404.1545(e)(2), 416.945(e)(2); *Diaz*, 55 F.3d at 306 n.2. The RFC is an issue at steps four and five of the sequential evaluation process. SSR 96-8p, 1996 WL 374184, *3 (July 2, 1996). The ALJ's RFC finding must be supported by substantial evidence. *Clifford*, 227 F.3d at 870. "The RFC assessment is a function-by-function assessment based upon all of the relevant evidence of an individual's ability to do work-related activities." SSR 96-8p, at *3. In arriving at an RFC, the ALJ "must consider all allegations of physical and mental limitations or restrictions and make every reasonable effort to ensure that the file contains sufficient evidence to assess RFC." *Id*. In formulating Plaintiff's RFC, the ALJ did not account for Plaintiff's difficulties staying awake during the day despite her use of a CPAP machine.

Remand is required for proper consideration of the evidence regarding Plaintiff's sleep apnea and her use of a CPAP machine.

### C. Other Issues on Remand

On remand, the ALJ is directed to address several other areas of concern in the decision.

1. *Credibility Determination*

The credibility determination contains errors in addition to the misstatement of the fibromyalgia diagnosis. First, the ALJ discredited Plaintiff on the basis that she "has benefit from her medications." (AR 39). Yet, despite some relief from the medications, Plaintiff continued to

13

report pain to her doctors. (AR 438, 436, 435, 432, 425,422). At the hearing, she testified, "I'm starting to feel the same [on] my medication. It only takes a little edge off. At first it was working a little but, but now it just . . . it really doesn't knock too much pain off anymore." (AR 65). Therefore, the ALJ's suggestion that her pain was resolved by medication is incorrect. And, it is not clear how Plaintiff's temporary relief from pain with medications makes her less than fully credible.

Second, the ALJ wrote, "The claimant appeared at the hearing with crutches due to her ASO brace, but reported that she could use a cane to assist with her left knee." (AR 39). In July 2011, Plaintiff's doctor at Lafayette Orthopaedic Clinic suggested that Plaintiff use a cane to take weight off her leg in the hope that it would decrease her pain. (AR 446). It is unclear how Plaintiff's adherence to the prescribed treatment of using a cane for knee pain makes her less than credible.

Third, the ALJ noted that Plaintiff "exhibited pain behavior at the hearing but recent medical appointments did not describe that pain behavior." (AR 39). The ALJ does not describe what "pain behavior" he was discrediting. Nor does he explain how that behavior was unsupported by the medical evidence much less cite any medical records that he considered when making this comparison. Early in the hearing, prompted by the ALJ's comment that she could stand if needed, Plaintiff repositioned herself, stating, "[M]y legs are bothering me real bad and my back." (AR 53). A little while later, her attorney asked her, "Do you need to get up?" to which she responded, "Yes," and then stood up. (AR 57). When asked whether the day of the hearing was a "bad day," Plaintiff responded, "Today is not all the way bad because I wouldn't be able to talk to you right now. I'm getting there though. I'm getting there. And I don't know if it's because of the long drive here, but I just got–when I was on my way I started–the pain started getting worse and when I got here it just started to even get worse." (AR 73). On a scale of one to ten, with ten being the worst pain, Plaintiff

14

rated her pain at a 10 while at the hearing, but she also stated that it could get worse. (AR 74). On remand, if the ALJ finds Plaintiff less credible because of her pain behavior at the hearing, the ALJ is directed to explain specifically how the behavior makes her less credible.

2.     *Obesity*

The ALJ's consideration of Plaintiff's obesity affected both the credibility determination and the RFC. The ALJ discredited Plaintiff in part because she had been advised to lose weight to help with the pain in her knee and leg. First, it is not clear how a claimant's allegations of pain would be less credible because she was advised to lose weight to reduce her pain. Second, Plaintiff did lose weight. At the time of the consultative examination in February 2011, Plaintiff weighed 377 pounds. At the time of the hearing in August 2012, Plaintiff weighed 326 pounds. Because Plaintiff's obesity exacerbates her impairments and pain, the ALJ should have found that her obesity makes her allegations of pain *more* credible. *See Barrett v. Barnhart*, 355 F.3d 1065, 1068 (7th Cir. 2004) ("Even if [the claimant's] arthritis was not particularly serious in itself, it would interact with her obesity to make standing for two hours a time more painful than it would be for a person who was either as obese as she or as arthritic as she but not both.").

Similarly, the ALJ did not take Plaintiff's obesity into account when formulating the RFC. Plaintiff's doctor at the Lafayette Orthopaedic Clinic opined that Plaintiff's weight "is contributing significantly to her problems of both patellofemoral pain and possible stress injury." (AR 446). Even the state agency reviewing physician noted that Plaintiff had decreased range of motion in most joints due to "pain and size." (AR 391). The doctor in the emergency room in January 2010 wrote that, "the best thing [Plaintiff] could do for herself is to lose some weight." (AR 301).

15

The ALJ generally recognized the need to consider obesity when he wrote, "I have considered the impact of the claimant's obese state upon his[sic] impairments in a manner consistent with the directives set forth in SSR 02-1p on obesity." (AR 37). But the ALJ did not do any further analysis of the effect of Plaintiff's obesity on the pain she experiences from her back and knee, the pain she experiences from fibromyalgia, or the fatigue she has from sleep apnea. The ALJ did not discuss the records cited above. The ALJ's failure to analyze the effect of Plaintiff's obesity on her other impairments requires remand. *See Goins v. Colvin*, 764 F.3d 677, 681 (7th Cir. 2014) (remanding, in part, because the ALJ failed to consider the claimant's obesity in combination with her other impairments); *Browning v. Colvin*, 766 F.3d 702, 706-07 (7th Cir. 2014) (faulting the ALJ for failing to consider the effect of the claimant's obesity in combination with the other impairments). Notably, the consultative examiner considered Plaintiff's obesity and found Plaintiff unable to do any type of activity on a full-time basis. As discussed above, the ALJ erred in weighing that opinion.

*3.     Depressesion*

Finally, because the Court is remanding on other issues, the ALJ shall consider Plaintiff's depression and GAF score of 59 when formulating the RFC and shall explain whether any limitations are required in the RFC based on depression.

**D. Request for an Award of Benefits**

An award of benefits is appropriate "only if all factual issues involved in the entitlement determination have been resolved and the resulting record supports only one conclusion—that the applicant qualifies for disability benefits." *Allord v. Astrue*, 631 F.3d 411, 415 (7th Cir. 2011). Based on the discussion above, remand, not an immediate award of benefits, is required.

## CONCLUSION

Based on the foregoing, the Court hereby **GRANTS** the relief sought in the Opening Brief [DE 17], **REVERSES** the final decision of the Commissioner of Social Security, and **REMANDS** this matter for further proceedings consistent with this Opinion and Order. The Court **DENIES** Plaintiff's request to award benefits.

So ORDERED this 15th day of September, 2015.

s/ Paul R. Cherry<br>
MAGISTRATE JUDGE PAUL R. CHERRY<br>
UNITED STATES DISTRICT COURT